UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 DEC 20  PH 3: 18

LORETTA G. WHYTE
CLERG.

01-3820

SECT. T MAG. 4

| | |
|---|---|
| MARC H. MORIAL, MAYOR OF THE CITY ) | CIVIL ACTION NO. |
| OF NEW ORLEANS, THE CITY OF NEW ) | |
| ORLEANS, CHRISTOPHER HORTON, ) | |
| TERRY KENDRICK, TRUDY CONNELLY, ) | |
| MARION JORDON, MARY MCLENDON, ) | DIVISION/SECTION_____ |
| SANDRA FAULK, LETHA RICHARDSON ) | |
| AND SHENER ALLEN, ) | DISTRICT JUDGE_____ |
|     Complainants, ) | |
| ) | |
| VERSUS ) | MAGISTRATE |
| ) |     JUDGE_____ |
| ) | |
| U.S. DEPARTMENT OF HOUSING AND ) | |
| URBAN DEVELOPMENT, MEL MARTINEZ, ) | |
| SECRETARY, U.S. DEPARTMENT OF ) | |
| HOUSING AND URBAN DEVELOPMENT, ) | |
| AND FRANK NICOTERA, IN HIS OFFICIAL ) | |
| CAPACITY AS EXECUTIVE MONITOR, ) | |
|     Defendants. ) | |

## VERIFIED COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY JUDGMENT, WRIT OF MANDAMUS, AND APPLICATION FOR INJUNCTION

**NOW COME** the plaintiffs, Marc H. Morial, Mayor of the City of New Orleans, the City

of New Orleans, Christopher Horton, Terry Kendrick, Trudy Connelly, Marion Jordon, Mary

McLendon, Sandra Faulk, Letha Richardson, and Shener Allen (hereinafter collectively referred to

as "the Complainants") by and through undersigned counsel and file this Complaint for Breach of

Contract, Declaratory Judgment, Writ of Mandamus and Application for Injunction.

### PRELIMINARY STATEMENT

1.

This complaint contends that the United States Department of Housing and Urban

Development ("HUD") breached the Cooperative Endeavor Agreement, dated February 8, 1996,

which was continued by a June 20, 2000 Cooperative Endeavor Agreement, the Amended Cooperative Endeavor Agreement, dated December 21, 2000 and the Annual Contributions Contract ("ACC") (hereinafter collectively referred to as "the Agreements"). (The Agreements are Attached as Exhibits A, B, C and D respectively).

2.

This action also seeks judicial review of imminent, arbitrary and capricious decisions by Mel Martinez, the Secretary of the United States Department of Housing and Urban Development to place the Housing Authority of New Orleans (hereinafter "HANO") into receivership and appoint an administrative receiver to oversee the operations of HANO, to systematically require the demolition of public housing without providing for adequate replacement housing for low income residents and citizens of New Orleans, and to systematically underfund the Housing Authority of New Orleans as compared to other similarly situated cities. These decisions could, if not enjoined, cause the residents of HANO and low income citizens of the City to continue to live in substandard, indecent, unsafe and unsanitary housing. The Secretary's decision is not properly supported by evidence, does not address the overwhelming problems facing HANO, will arbitrarily continue to place the residents of HANO at risk for substandard living conditions, constitutes an abuse of discretion, and strips public housing tenants of their basic civil rights to sanitary and safe housing.

3.

Complainants also seek declaratory and injunctive relief requiring HUD to perform its obligations under the Agreements.

2

4.

Complainants further allege that HUD should be restrained from appointing an administrative receiver pursuant to 5 U.S.C. § 501 et. seq. of the Administrative Procedure Act, on the grounds that the appointment of an administrative receiver by the Secretary is arbitrary, capricious and not in accordance with law.

5.

Complainants further petition this court to appoint a judicial receiver to oversee the future operations of HANO.

## JURISDICTION

6.

This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337, 1343(a)(3), 1346(a)(2), and 1361. This action arises under federal law, including 42 U.S.C. § 1437 and 42 U.S.C. § 1983.

7.

Complainants' action for declaratory and injunctive relief is authorized under:

(a)     28 U.S.C. § 2201 and § 2202 which authorize the Court to grant declaratory relief and such other relief as the Court deems proper;

(b)     42 U.S.C. § 1983 which provides redress for the deprivation under color of state law of any right, privilege or immunity secured to persons by the Constitution and laws of the United States.

(c)     5 U.S.C. § 501 et seq. which provides for relief under the Administrative Procedure Act.

3

## VENUE

8.

Venue in this Court is proper pursuant to 28 U.S.C. § 1391(e)(2) and (e)(3), and 28 U.S.C. § 1402(a)(1).

## PARTIES

9.

Complainant, The Honorable Marc H. Morial, in his official capacity as Mayor of the City of New Orleans and in his capacity as *parens patriae* for the citizens of New Orleans, is duly authorized to bring this action on behalf of the citizens of New Orleans.

10.

Complainant, the City of New Orleans, is a municipal corporation and political subdivision of the State of Louisiana.

11.

Complainants, Christopher Horton, Terry Kendrick, Trudy Connelly, Marion Jordon, Mary McLendon, Sandra Faulk, Letha Richardson, and Shener Allen are all persons of the full age of majority, residents of Orleans Parish and former residents of the now-demolished St. Thomas Housing development, who are now displaced or are not living in equivalent housing.

12.

Defendant, Mel Martinez, is now, and at all times mentioned was, the duly appointed, Secretary of the United States Department of Housing and Urban Development.  Defendant, Mel Martinez, is sued in his official capacity.

4

13.

Defendant, Frank Nicotera, is sued in his official capacity as Executive Monitor.

## FACTS

14.

In 1937, the Housing Authority of New Orleans (hereinafter "HANO") was established as an autonomous public agency created by Louisiana state law and has been operating under local, state and federal laws.

15.

The City of New Orleans has approximately eleven (11) Housing Project Developments and/or residential areas, which are managed by HANO, including but not limited to: Fischer, which was constructed in 1963; Iberville, which was constructed in 1939; C.J. Peete/ Magnolia, which was constructed in the 1940's and in the1950's; St. Bernard, which was constructed in 1941 and in the 1950's; Florida, which was constructed in the 1940's and in the 1950's; Desire, which was constructed in the 1950's; B.W. Cooper, which was constructed in 1939 and in the 1950's; St. Thomas, which was constructed in 1939 and in the 1950's; Lafitte, which was constructed in the 1940's and in the 1950's; Guste, which was constructed in the 1950's and 1960's and Press Park which was constructed in 1969 through 1971.

16.

In 1979, HANO was designated by HUD as a "troubled housing agency." Under the Public Housing Management Assessment Program (PHMAP), a housing authority is considered "troubled" if it scores less than sixty (60) on a one-hundred (100) point scale. HANO has retained the designation of a troubled housing authority from 1979 to 1998. Under HUD's recently revised

5

Public Housing Assessment System, HANO is likely to, once again be designated as "troubled."

17.

Since 1980 and continuing until approximately February 8, 1996, HANO's decision making power rested with its Board of Commissioners (hereinafter "the Board"). Until February 1996, the Board oversaw HANO and made administrative strategic decisions regarding HANO.

18.

In 1988, HANO began operating under a Memorandum of Agreement (hereinafter "MOA") with HUD to improve the serious problems that were facing HANO. Under the MOA, HANO could no longer make decisions affecting operations and management of the agency instead, HANO, its Board of Commissioners and HUD had to work "cooperatively" to make decisions that would affect the operations and management of HANO.

19.

In 1989, one year after the MOA was entered into, HUD issued a Request for Proposal (hereinafter "RFP") in which it sought a Management Contractor to co-manage HANO with HANO's board. In response to the RFP, The Management Group of America (hereinafter "TMGA") was awarded the management contract of HANO in 1990. TMGA was hired to fulfill a consulting, quasi-management role on behalf of HANO. In 1991, after only one year as the consultant-manager of HANO, TMGA's contract was not renewed.

20.

On July 1, 1991, HUD hired C.J. Brown to act as consultant and manager for HANO. C.J. Brown managed HANO for a period of approximately three years. In September of 1991, HUD issued a limited denial of participation to the entire HANO Board of Commissioners, effectively

6

stripping the Board of all powers. After this action by HUD, the Mayor of New Orleans, Sidney Barthelemy, appointed an entire new Board of Commissioners on October 1, 1991. On September 30, 1994, C.J. Brown's contract ended.

21.

In June 1994, the Office of the Inspector General for HUD (hereinafter "OIG"), reported that none of HANO's housing units met HUD's Housing Quality Standards. It concluded that HANO did not provide its tenants with decent, safe and sanitary housing and that conditions at HANO had not improved since 1983. Pursuant to these findings, negotiations between the Mayor of the City of New Orleans and HUD were initiated to avoid HUD declaring that HANO was in breach of its Annual Contributions Contract (hereinafter "ACC"). The partnership had very little impact on housing conditions and the operational performance of HANO.

22.

In 1996, pursuant to the United States Housing Act of 1937, 42 U.S.C. § 1437, et seq., HUD took over the operation and control of HANO. The takeover was precipitated by what HUD believed was a breach of the ACC by HANO. HANO's alleged breach of the contract would be viewed by HUD as a substantial default as defined in § 6(j) of the United States Housing Act of 1937 and 24 CFR § 901.05(y), thereby leading HUD to believe that, pursuant to 24 CFR §§ 901.200 and 901.215, it could assume possession and operational responsibility of HANO.

23.

On February 8, 1996, the Mayor of the City of New Orleans and HUD entered into a Cooperative Endeavor Agreement (hereinafter "CEA"), which was duly ratified by HANO's Board of Commissioners. Under the CEA, the existing seven member HANO Board of Commissioners

7

was replaced by an Executive Monitor, HUD's Acting Assistant Secretary for Public and Indian

Housing, Mr. Kevin Marchman.   Marchman and the Mayor appointed Mr. Ron Mason, General

Counsel for Tulane University, as an Executive Monitor to oversee HANO's recovery and serve in

the Assistant Secretary's absence.  Additionally,  HUD personnel were assigned to work at HANO.

In his capacity as Executive Monitor, Mr. Mason was authorized to oversee, coordinate and monitor

the activities of HANO in a 24-month action plan for public housing renewal in the City of New

Orleans. He was to further review plans and implementation strategy set forth by HUD/HANO/New

Orleans officials and to recommend to HUD specific steps and strategies for carrying out the goals

and objectives of significantly improving the quality of life for public housing residents. HUD also

hired Anderson Consulting to provide HANO with technical support services, including the

development of a short and long-term plan to improve HANO's operations. Under this scheme, HUD

was essentially the Board of Directors.

24.

On September 30, 1996, HANO and HUD executed a annual contribution contract with

HANO.  Kevin E. Marchman, signed the agreement on behalf of HANO.  The agreement provided,

*inter alia*, that HUD shall administer the Federal public housing program for the provision of decent,

safe and sanitary housing;  that HUD shall provide maximum responsibility and flexibility to

Housing Authorities in making administrative decisions and that HUD shall provide annual

contributions to the Housing Authority.  The ACC included  debt service annual contributions;

additional annual contributions to the Housing Authority for each permanently financed project and

within its discretion, Debt Service Annual Contributions to the Housing Authority for each project

not permanently financed and provides for the annual federal subsidy required to operate public

8

housing for the low income citizens of New Orleans.

25.

On June 15, 1998, the OIG issued an audit report of HANO's HOPE VI Grants. The report acknowledged that some of HANO's problems and difficulties are largely beyond its control, regarding the long history of poor performance and little success improving housing conditions for low income residents. It further acknowledged that HUD must share some responsibility for not providing adequate oversight over the Desire grant and for the high risk venture. It further acknowledged that HUD HOPE VI staff were inexperienced and understaffed thereby making HUD inept to manage the large HOPE VI portfolio.

26.

On December 21, 2000, the City of New Orleans and HUD entered into an amended CEA pursuant to which a new HUD appointee was assigned to fulfill the duties of the HANO Board of Directors and a new HUD Executive Monitor, Mr. Frank Nicotera, was also appointed. The Amended CEA is effective until December 31, 2003. The amended CEA provides that the City and HUD agree to the following:

> to cooperate in, and take all necessary actions to facilitate the achievement of the objectives therein; to seek solutions as necessary that present impediments to improvements in HANO's performance, including security and quality of life; to the appointment of Frank Nicotera as the Executive Monitor of the Agreement; to provide joint administrative oversight of HANO to ensure that the actions required by the Agreement are accomplished.

27.

Since at least February 1996 up to the present, HANO has been under the control and supervision of HUD and the Assistant Secretary for Public and Indian Housing and his official designee.

28.

On July 7, 1998, HUD removed HANO from HUD's list of troubled housing authorities and commended HANO staff for operational improvements, as measured by HUD's Public Housing Management Assessment Program. Under HUD's new Public Housing Assessment System, HANO will once again, be classified as troubled.

29.

On June 4, 2001, D. Michael Beard, the Southwest District Inspector General of the OIG determined that the CEA had done little to improve HANO operations and the quality of housing had not significantly improved in the last five (5) years [during which time HUD was in majority control of HANO].

30.

Despite Mr. Beard's report, HUD publicly announced that it would appoint an administrative receiver to oversee HANO's operations. In essence, HUD would appoint a third level of bureaucracy to administer HANO despite the federal government's own admission of the failure of this scheme. This decision was made despite overwhelming support for the appointment of a judicial receiver by many prominent federal and state elected officials and the Complainants. If Defendants proceed with the announced plan to appoint an administrative receiver, Complainants will suffer continuing, imminent and irreparable harm.

10

31.

Complainants have no plain, speedy or adequate remedy other than the issuance by this Court of an injunction restraining Defendants, or anyone acting on their behalf or under their orders, from proceeding any further with the appointment of an administrative receiver.

## COUNT I -BREACH OF THE AMENDED
## COOPERATIVE ENDEAVOR AGREEMENT

32.

Under the CEA and the amended CEA, HUD and the City were supposed to: (1) seek solutions necessary to resolve systematic issues that are impeding improvements in HANO's performance; (2) provide administrative oversight of HANO to ensure that actions required by the CEA are accomplished; and (3) work with HANO staff as appropriate to provide guidance and assistance when necessary.

33.

The City complied with the terms of the CEA. However, HUD has breached the Amended CEA by failing to take all necessary actions to facilitate the achievement and implementation of the agreement. The breaches include, but are not limited to the following acts or omissions:

34.

HUD has not assisted with improving security and quality of life for residents of HANO; and,

35.

HUD has not provided adequate, sufficient or effective administrative oversight of HANO in order to ensure that the actions required by the agreement were accomplished.

11

36.

HUD's failure to meet its obligations under the Cooperative Endeavor Agreement has resulted in the deterioration and non-renovation of HANO properties, to the detriment of the Complainants.

37.

HUD's breach of the Cooperative Endeavor Agreement cannot be resolved. As a result, Complainants are entitled to monetary damages for the said breach.

## COUNT II - BREACH OF THE ANNUAL CONTRIBUTIONS CONTRACT

38.

On September 30, 1996 an Annual Contributions Contract was entered into between HANO and HUD. The ACC is the administrative device pursuant to which HUD provides funds to HANO and thereby enabling HUD and HANO to fulfill the obligation of the CEA and the amended CEA.

39.

Under the ACC, HUD agreed to the following: (1) administer the Federal housing program to provide decent, safe and sanitary housing to low income residents; (2) provide maximum responsibility and flexibility to HANO with regard to making administrative decisions; and (3) provide annual contributions to HANO.

40.

However, HUD has breached the ACC by failing to take all necessary actions to facilitate the achievement and implementation of the contract. The breaches include, but are not limited to the following acts or omissions:

12

41.

HUD has breached by failing to achieve its objections as stated in the contract. The failures include, but are not limited to the following acts or omissions:

42.

HUD has failed to provide decent, safe and sanitary housing to eligible families of the City of New Orleans;

43.

HUD has failed to provide maximum responsibility and flexibility to HANO with regard to administrative decisions; and,

44.

HUD has failed to provide or has delayed appropriate annual contributions which impedes HANO's ability to revitalize demolished area sites, which include Desire, Florida, C.J. Peete/Magnolia, St. Thomas and Fischer.

45.

HUD's breach of the Annual Contributions Contract cannot be resolved. As a result, plaintiffs are entitled to monetary damages for the said breach.

## **COUNT III – DECLARATORY RELIEF**

46.

Complainants hereby reallege and re-aver the factual allegations of paragraphs 11 through 29.

47.

An actual and substantial controversy exists with sufficiency immediacy to warrant a

13

Declaratory Judgment. HUD notified the Mayor by letter on December 19, 2001 that HUD intended to place HANO into administrative receivership "soon." HUD officials confirmed the same to the news media, via The Times Picayune on December 19, 2001. The controversy is not nebulous or contingent.

48.

HUD has failed to meet the requirements of the CEA with respect to taking all necessary actions to improve HANO and the quality of life for HANO residents.

49.

HUD has failed to provide low income residents with decent, safe, and sanitary housing.

50.

HUD has failed to appropriate the necessary funding for HANO to operate its facilities effectively and efficiently in its effort to provide safe and sanitary housing for its residents.

51.

For the past five years, HUD has operated HANO under a "quasi-administrative receivership," during which time the quality of housing has not significantly improved.

52.

HUD has failed to appropriate necessary funding to improve HANO's housing sites.

## COUNT IV - VIOLATION OF CONSTITUTIONAL AND CIVIL RIGHTS

53.

Residents of public housing are entitled to decent, safe and sanitary housing, pursuant to 42 U.S.C. § 1437.

54.

Defendants, by their acts and omissions, have caused HANO properties to deteriorate, resulting in many HANO dwellings to become unsafe and unsanitary.

55.

The defendants' delays in considering and approving revitalization projects and funding and failures to perform obligations under both the Cooperative Endeavor Agreement and the Annual Contributions Contract have prevented renovations and/or new construction within the several housing developments.

56.

If Defendants continue this pattern of activity, demolition, renovation and new construction to remedy unsafe and unsanitary conditions at housing developments and other HANO properties will be impeded, further depriving Complainants of their entitlement to decent, safe and sanitary housing.                                           57.

HUD has systematically requested the demolition of public housing units in New Orleans without providing for adequate replacement housing, in direct contravention of HUD's own statutory mission. Because the amount of federal subsidy to local housing authorities is based on the number of public housing units, the effect of HUD's demolition scheme is to reduce the amount of operating subsidy received by local authorities further undermining the ability of the local authorities to provide safe and affordable housing.

58.

The citizens of New Orleans have been and will continue to be harmed by the acts and omissions of the defendants, which have forced the public housing residents in New Orleans to live

15

in unsafe and unsanitary conditions.

59.

HUD has also engaged in a pattern of disparate treatment of the City of New Orleans as compared to other cities. HUD has not only failed to comply with the terms of the CEA and the amended CEA, but the CEA and ACC agreements are substantially different from what has been provided to other similarly situated housing authorities, all in violation of the Constitutional rights of the citizens of New Orleans.

60.

The arbitrary and capricious actions of HUD have violated the due process and equal protection rights of individual Complainants pursuant to the Fourteenth (14th) Amendment of the United States Constitution.

61.

The above described actions of HUD violate 42 U.S.C. §1437 (a) (1) (A); 42 U.S.C. §1437 (a) (1) (B); 42 U.S.C. §1437 (c) (5) (e) (2); 42 U.S.C. §1437 (c) (1) (e) (1); 42 U.S.C. §1437 (g) (d) (1); and 42 U.S.C. §1437 (p).

## COUNT V – THE SECRETARY OF HUD SHOULD BE RESTRAINED AND ENJOINED FROM APPOINTING AN ADMINISTRATIVE RECEIVER

62.

The Secretary's decision to appoint an administrative receiver, although not final is imminent. It is devoid of evidence and support that such appointment would benefit low income residents.

63.

Since February 1996, HUD has effectively operated HANO when it became the Board of

Commissioners for HANO and when it entered into the Cooperative Endeavor Agreement.

64.

Despite the appointment of two other bureaucrats, the "quasi administrative receivership"

has not worked and has left low income residents in deplorable, substandard, unsanitary and unsafe

living conditions, all in breach of the Agreements between HUD, HANO and the complainants.

65.

Section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706, authorizes the Court on

judicial review of an agency's informal rule-making to:

> "(2)    hold unlawful and set aside agency, findings and conclusions
> found to be ...
>
> (A)    arbitrary, capricious, an abuse of discretion, or
> otherwise not in accordance with law; . . .
> * * *
>
> (C)    in excess of statutory . . . authority, or limitations, or
> short of statutory right."

66.

The history of HANO has proven that HUD operates it ineffectively and inefficiently. HUD

has not improved the quality of life for low income residents. If left with the option of appointing

an administrative receiver, HUD will continue to cause immediate and irreparable harm to the

citizens of New Orleans.

67.

Complainants will suffer irreparable injury if defendants are not enjoined during the

pendency of this lawsuit from appointing an administrative receiver to oversee the operations of

17

HANO.  The plaintiffs have no other remedy at law other than to restrain defendants.  If defendants are allowed to appoint an administrative receiver, then HANO will continue to operate ineffectively and low income residents will continue to live in substandard, indecent, unsafe and unsanitary housing.

68.

There is a substantial likelihood that Complainants will prevail on the merits, because it is clear that HUD has breached both its Cooperative Endeavor Agreement and the Annual Contributions Contract; and has violated the Civil Rights of the citizens of New Orleans.

69.

The threatened harm to the Complainants outweighs the harm a preliminary injunction would inflict on Defendants.  If the defendants are restrained from appointing an administrative receiver, then they have another remedy at law.  They can seek the appointment of a judicial receiver.  If defendants are not restrained and appoint an administrative receiver, then the citizens of New Orleans will continue to live in substandard housing.

70.

Issuance of a preliminary injunction is in the public interest because it will prevent the defendants from appointing an administrative receiver.  This restraint will allow HANO to seek appointment of a judicial receiver who could oversee the operations of HANO and would put an end to the substandard living that has been on-going since HUD entered into the Cooperative Endeavor Agreement, more than five (5) years ago.

18

**WHEREFORE**, Complainants request the Court to grant the following relief:

I.

Complainants ask the court to set their application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, issue a preliminary injunction against defendants.

II.

Complainants further ask the court to set their application for injunctive relief for a full trial on the issues in this application and, after the trial, to issue a permanent injunction against defendants.

III.

Enter an order pursuant to the Administrative Procedure Act setting aside any decision by HUD to appoint an administrative receiver or removing any of the existing personnel operating under the correct CEA and Amended CEA.

IV.

Declare that HUD failed to improve HANO operations;

V.

Declare that HUD failed to improve the quality of housing HANO residents;

VI.

Declare that HUD failed to appropriate necessary funding to assist HANO with improving the quality of housing for low income residents;

VII.

Declare that HUD failed to provide HANO residents with decent, safe and sanitary housing;

VIII.

Declare that HUD has breached the Agreements;

19

IX.

Issue a preliminary injunction enjoining the defendants from appointing an administrative receiver for the Housing Authority of New Orleans located in New Orleans, Louisiana, until such time that plaintiffs' request for preliminary relief contained in this complaint can be heard and determined by this court.

X.

After full trial, issue a permanent injunction maintaining the preliminary injunction restraining defendants from appointing an administrative receiver for the Housing Authority of New Orleans, located in New Orleans, Louisiana;

XI.

Appoint a judicial receiver to manage and control the Housing Authority of New Orleans.

XII.

Direct HUD to appropriate funding in the amount of 151.2 million dollars for HANO's Capital Fund Program Five Year Plan and/or to appropriate such funds as have been allocated to similarly situated housing authorities;

XIII.

Direct HUD to appropriate funding in the amount of 44.0 million dollars to the HOPE IV Grant for the redevelopment of the Fischer and Guste Housing Project Developments and/or to appropriate such funds as have been allocated to similarly situated housing authorities;

XIV.

Issue a writ of mandamus to HUD directing it to appropriate funding in the amount of 155.2 million dollars in order to rebuild the sites of the Florida LA 1-4 and B.W. Cooper LA 1-12 Housing Project Developments pursuant to Section 202 regulations and/or to appropriate such funds as have been allocated to similarly situated housing authorities;

XV.

Issue a writ of mandamus to HUD directing it to appropriate funding in the amount of 896.8 million dollars in order to replace public housing (ACC) units lost through demolition, de-densification and mixed income development activities and/or to appropriate such funds as have been allocated to similarly situated housing authorities;

XVI.

Issue a writ of mandamus to HUD directing it to appropriate funding in the amount of 20 million dollars to fund the back-log of self-insurance claims incurred by HANO and/or to appropriate such funds as have been allocated to similarly situated housing authorities;

XVII.

Maintain continuing jurisdiction of this case;

XVIII.

Award to the Complainants their costs, disbursements and attorney's fees in this action;

XIX.

Enter judgment in favor of Complainants; and

XX.

Grant any other relief as may be just and equitable.

Respectfully submitted this 20th day of December, 2001.


ROY J. RODNEY, JR. (#2079)
Rodney, Bordenave, Boykin & Ehret, APLC
400 Poydras Street, Suite 2450
New Orleans, LA 70130
Telephone: 504/524-5450
Facsimile:  504/527-5436

MAVIS EARLY (#1343)
City Attorney
City of New Orleans
1300 Perdido Street
5th Floor
New Orleans, LA  70112
Telephone: 504/565-6200
Facsimile: 504/565-6207

Attorneys for the Complainants

21

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARC H. MORIAL, MAYOR OF THE CITY OF NEW ORLEANS THE CITY OF NEW ORLEANS, CHRISTOPHER HORTON, TERRY KENDRICK, TRUDY CONNELLY, MARION JORDON, MARY MCLENDON, SANDRA FAULK, LETHA RICHARDSON AND SHENER ALLEN, <br>    Complainants, <br><br>**VERSUS** <br><br> U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, MEL MARTINEZ, SECRETARY, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, AND FRANK NICOTERA, IN HIS OFFICIAL CAPACITY AS EXECUTIVE MONITOR <br>    Defendants | CIVIL ACTION NO._____ <br><br><br><br><br><br> DIVISION/SECTION_____ <br><br> DISTRICT JUDGE_____ <br><br> MAGISTRATE <br>    JUDGE_____ |

## ATTESTATION OF COUNSEL

STATE OF LOUISIANA    }
PARISH OF ORLEANS    }

Before me, the undersigned authority, appeared Mavis Early, a person known to me who stated as follows:

1.    I am attorney of record for the Complainants and City Attorney for the Parish of Orleans in the above-captioned matter.

2.    On the 20th day of December, 2001, at about 11:30 a.m., the attached Verified Complaint, Motion for Temporary Restraining Order and Preliminary Injunction, and Summons were delivered by hand to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Louisiana.

3.    On the 20th day of December, 2001, at about 11:30 a.m. the attached Verified Complaint,

Motion for Temporary Restraining Order and Preliminary Injunction, and Summons were sent by U.S. Mail postage prepaid, certified return receipt to the Attorney General of the United States.

4.    On the 20th day of December, 2001, at about 11:30 a.m. the attached Verified Complaint, Motion for Temporary Restraining Order and Preliminary Injunction, and Summons were sent by U.S. Mail postage prepaid, certified return receipt to ~~the Inspector General of the United States Department of Housing and Urban Development.~~ *Frank Nicotera, Executive Monitor*

5.    On the 20th day of December, 2001, at about 11:30 a.m. the attached Verified Complaint, Motion for Temporary Restraining Order and Preliminary Injunction, and Summons were sent by U.S. Mail postage prepaid, certified return receipt to the Secretary of the United States Department of Housing and Urban Development.

_____
Attorney

Sworn before me, this _20th_ day of December, 2001.

_____
Notary Public

2

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| MARC H. MORIAL, MAYOR OF THE CITY OF NEW ORLEANS THE CITY OF NEW ORLEANS, CHRISTOPHER HORTON, TERRY KENDRICK, TRUDY CONNELLY, MARION JORDON, MARY MCLENDON, SANDRA FAULK, LETHA RICHARDSON SHENER ALLEN AND FELTON WHITE | ) ) ) ) ) ) ) ) | CIVIL ACTION NO._____ |
| Complainants, | ) | |
| | ) | DIVISION/SECTION_____ |
| VERSUS | ) ) | DISTRICT JUDGE_____ |
| | ) | |
| U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, MEL MARTINEZ, SECRETARY, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | ) ) ) ) | MAGISTRATE    JUDGE_____ |
| Defendants | ) | |
| _____ | ) | |

**VERIFICATION**

STATE OF LOUISIANA       }
PARISH OF ORLEANS        }

Before me, the undersigned authority, appeared Marc H. Morial, Mayor for the City of New Orleans, a person known to me who stated as follows:

1.      I am a person of the age of majority.

2.      I am a resident of Orleans Parish, Louisiana.

3.      I have read the attached Verified Complaint, Motion for Temporary Restraining Order and Preliminary Injunction.

4.      I verify that the facts recited in the attached pleadings are true, based on personal knowledge and belief.

_____
Complainant

Sworn before me, this 20th day of December, 2001.

_____
Notary Public

3

**SEE RECORD FOR
EXHIBITS
OR
ATTACHMENTS
NOT SCANNED**